# CHICAGO & NORTH-WESTERN RAILWAY COMPANY

## v.

## ANNIE DUNLEAVY, ADM'X.

*Railroads—Action to Recover Damages for Causing Death—Viaduct—Repairs—Instructions—Rules—Questions for Jury—Requests for Special Findings—" Material" Questions.*

1. In an action against a railroad company to recover damages for causing the death of a workman while he was engaged in repairing a viaduct over the defendant's track, it is *held:* That certain instructions were properly refused; and that the defendant had no right to run its trains at any rate of speed, at the point and time in question, without warning to those rightfully engaged in repairing said viaduct.

2. It is for the jury to say what conduct, or what acts, constitute care or its opposite. Therefore, answers to requests for special findings as to special acts without finding as to the ultimate facts of care or negligence, are merely surplusage.

3. Requests for special findings which require the jury to answer merely as to acts or omissions which may or may not, in their opinion, be evidence of care or negligence, and from their answers to which, either way, the court can not say as matter of law whether care or negligence is the result, are not material within the meaning of the statute.

4. It is the sole province of the jury to determine the weight of evidence and to consider conflicting evidence, without assistance from the court.

5. It is proper to refuse an instruction to the effect that positive evidence as to the occurrence of a fact is entitled to greater weight than negative evidence regarding it.

6. It is proper to refuse an instruction which, in effect, tells the jury to believe the witnesses for one party and to disbelieve those of the other party to the case on trial.

7. An instruction touching an irrevelant matter should be refused.

8. It is proper to refuse an instruction which correctly states a rule of law applicable to the case, which finds appropriate expression in other instructions given.

[Opinion filed December 7, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. W. B. KEEP and W. C. GOUDY, for appellant.

Messrs. M. L. KNIGHT and JOSEPH H. KENNARD, JR., for appellee.

GARY, J.   This is an action under the statute for causing the death of John Dunleavy.   On the 26th of July, 1886, he, with others employed by the city of Chicago, were engaged, as they had been the day before, in cleaning and painting the iron columns supporting the viaduct by which Blue Island avenue crosses the tracks of appellants.   A west-bound freight train of appellants struck and killed Dunleavy a little after half past nine o'clock of that morning.

There is the usual conflict of testimony as to the speed of the train and signals by bell or whistle, but, as the evidence in this case stands, it is sufficient to say that it made a case for the jury to decide, which they did, according to established usage.

Appellants asked the court to require the jury to find:

"1.   What precaution did the deceased take to inform himself of the approach of the train which caused the injury?"

"4.   Did the deceased look to ascertain if the train in question was approaching?"

"5.   Did the deceased listen to ascertain if the said train was approaching?"

The first question the court declined to put to the jury, and they answered, "Don't know," as to the other two.   The jury were also asked:

"2.   If the deceased had looked before the accident could he have discovered the approach of the train in time to have avoided the accident?"

The answer was "Yes."

"3.   If the deceased had listened before the approach of said train could he have discovered the approach of said train in time to have avoided the accident?"

And they answered:   "If he had concentrated his attention in that particular direction, yes."   As to the first question, it is apparent that if it had been put the jury must have answered it, as they did 4 and 5, and that because the man who alone had knowledge upon the subject is dead.   But the an-

swers to 2 and 3 show what, in the opinion of the jury, he might have seen or heard; and so the question is raised whether, under any circumstances, by running at great speed and giving no signal, a railway may become liable for injury to one rightfully engaged at the place of injury, the railway having notice that the work in which he was engaged was being done, and the party injured taking no precaution by which he would be warned of the approach of the train. Whatever may be said as to what would be proper care on the part of the party injured, and of his duty in that regard, the doctrine of comparative negligence, as established in this State, makes that a question for the jury, under appropriate instructions. If it shall ever become a question before a court having jurisdiction to decide it, whether a statute which requires a jury to do what is impossible, is valid and not inconsistent with the constitutional right of trial by jury, then that court will probably decide the question. At common law the jury have the right to find a general verdict, and can not be required to give any reason for it. 3 Bl. Com. 378. And whether legislation which, in effect, requires them to give reasons, and which not only requires unanimity in the result, but in the process by which that result is reached, is consistent with the right guaranteed by the constitution, may deserve consideration.

It is not for the court, but for the jury, to say what conduct or what acts do or do not constitute care or its opposite. Answers, therefore, as to specific acts, without finding as to the ultimate facts of care or negligence, are merely surplusage, and no question which require a jury to answer merely as to acts or omissions which may or may not, in the opinion of a jury, be evidence of care or negligence, but from the answers to which, either way, a court can not say, as a matter of law, whether care or negligence is the result, can be in the sense in which the word is used in the statute, "material."

The action of the court as to these questions was not erroneous, either in refusing to submit to the jury the first question, or in not regarding the answers to the second and third as inconsistent with a general verdict for the plaintiff, or in accepting the answers to the fourth and fifth as sufficient.

The refusal of the court to give the four following instructions, is assigned as error.

"No. 15.  The jury are instructed, as matter of law applicable to this case, that positive evidence as to the occurrence of a fact is entitled to more weight than negative evidence in relation to it, and that the testimony of witnesses who testify positively that the bell and whistle of the engine of the train causing the injury to the deceased was rung and blown is entitled to more weight than the testimony of persons who testify that they did not hear it."

"No. 17.  The jury are instructed, as matter of law, that if you believe from the evidence in this case that both the deceased and the agents and servants of the defendant were guilty of gross negligence, contributing to the injury complained of in this case, your verdict should be for the defendant."

"No. 20.  The jury are instructed, as a matter of law applicable to this case, that, under the pleadings in this case, the defendant, the railway company, had a right to run its engine and train at the time and place of the injury to deceased at any rate of speed consistent with the safety of its employes and the property on its train."

"No. 21.  The jury are instructed, as a matter of law, that the defendant in this case was only bound to keep and maintain its tracks in such location and condition as to viaducts or columns which supported the same, as might be consistent with the safety of its own employes and of passengers upon its trains."

"It is the sole province of the jury to determine the weight that evidence should receive, and equally so to consider conflicting evidence, without any assistance from the court." Frizell v. Cole, 42 Ill. 362.

It is not an infringement of this rule for the court to instruct the jury as to legal principles relating to the credibility of witnesses, but the 15th instruction went beyond this, and would have told the jury that "the testimony of witnesses who testify positively that the bell and whistle of the engine of the train in question were rung and blown" was entitled to more weight, etc., without regard to motive or interest of the wit-

'nesses, intelligence or attention at the time. It went further than to announce a rule and, in effect, told the jury to believe the witnesses for the defendant in the case on trial. T. W. & W. Ry. Co. v. Brooks, 81 Ill. 245.

The 17th instruction is correct and should have been given if it had been the only one covering the point. But if the court has in one instruction given the same, or more favorable to the party asking it, rule for the jury to be guided by, it is not necessary to repeat it. Scott v. Delany, 87 Ill. 146, is enough to cite, but the cases are many.

In the 4th instruction given for appellant, the jury were told that if the appellee had failed to prove, by a preponderance of the evidence, that the deceased was exercising ordinary care and prudence for his safety at the time of the accident, she could not recover. In the 6th, that if by the exercise of the highest decree of vigilance and care, by the deceased, the injury might have been avoided, she could not recover; and the same principle is in many forms stated in others of appellant's instructions, as well as in those of the appellee.

The 20th and 21st ignore all duty on the part of the appellant to have any regard for the welfare of the general public. It is true, the place of the accident was not what is commonly known as a street crossing. It had been at one time, but the street had been carried over the track by a viaduct, after the track was laid, if notice may be taken of the common usage that a viaduct is not built until after a crossing has become very dangerous. The structure was subject to decay. The necessity for repairs would occasionally come. The repairs were actually in progress, of which there was evidence from which the jury might find that the appellants had notice, as the men were at the same work the day before.

The statement that the appellants had the right to run at any rate of speed, etc., implies that there was no duty to warn anybody of the approach of the train—if they were in the exercise of their unqualified right, everybody must keep out of their way. It is not a statement that they had a right to run, by warning persons rightfully in a place where great speed of the train would put them in peril, but an absolute,

unqualified and untrammeled right. The 21st probably was not intended to mean what it says, "that the defendant in this case was only bound to keep and maintain its tracks."

As to the tracks, it may be conceded that the instruction does state the full duty of the appellants, but that was not the full duty of the appellants as to the whole subject-matter of the suit. If they were only bound as to this one thing, there was no other obligation resting upon them. Besides, there was no question made in the case as to location of tracks, and the instruction was irrevelant to the controversy. These instructions were properly refused.

There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*